PETERS & RUSSELL, Inc., v. DORF-
MAN.

No. 10320.

United States Court of Appeals
Seventh Circuit.

Heard April 12, 1951.

Decided April 27, 1951.

Will Freeman, George E. Frost, Chicago,
Ill., Theodore Greve, Cincinnati, Ohio,
Charles M. McKnight, Tulsa, Okl., Bair,
Freeman & Molinare, Chicago, Ill., for ap-
pellant.

Charles B. Spangenberg, Sidney Wallen-
stein, Erwin M. Pearl, Chicago, Ill., for
appellee.

Before MAJOR, Chief Judge, and
KERNER and FINNEGAN, Circuit
Judges.

MAJOR, Chief Judge.

This appeal is from a final decree, entered
December 4, 1950 in an action for infringe-
ment of United States letters-patent No.
2,224,433, issued December 10, 1940 to H.
Holden, and No. 2,478,161, issued August 2,
1949 to Linus E. Russell. By the decree
it was adjudged that defendants had not in-
fringed claim 1 of the Holden patent (the
only claim relied upon) but that if the
claim be construed so as to be infringed that

it was "invalid for want of invention over the prior art." It was also adjudged that the claims of the Russell patent were not infringed and that they were "invalid for want of invention over the prior art." Thereupon, the suit was dismissed for want of equity.

The parties in their briefs have first given consideration to the Russell patent, and we shall do likewise. No testimony was heard relative to this patent and the court's decree is predicated upon the following finding: "After Defendants filed a Counterclaim, denominated as such, alleging, among other things, that the claims of Russell Patent No. 2,478,161 were not infringed and were invalid for want of invention over certain cited and identified prior art patents, Plaintiff filed no reply thereto. Such failure to reply constitutes an admission by Plaintiff of the specific allegations of Defendants as to the invalidity and noninfringement of the claims of said Russell patent."

Plaintiff makes no attack upon the factual portion of this finding, but nevertheless argues that the court's conclusion was erroneous. Defendants, in support of the court's action, rely upon Rule 7(a), Federal Rules of Civil Procedure, Title 28 U.S.C.A., which states, so far as here material, "there shall be a reply to a counterclaim denominated as such," and upon Rule 8(d), which states, "Averments in a pleading to which a responsive pleading is required * * * are admitted when not denied in the responsive pleading." As shown by the finding heretofore quoted, defendants' counterclaim was "denominated as such," and also as shown, the court concluded that plaintiff's failure to reply thereto constituted an admission by the plaintiff of the specific allegations of defendants' counterclaim as to invalidity and non-infringement.

Plaintiff not only argues that the court's action was unauthorized under the rules but that under the pleadings and circumstances it lost jurisdiction to make an adjudication as to validity. This contention appears to necessitate a further statement as to the status of the pleadings and the circumstances with which the court was confronted. As shown by the court's findings, plaintiff filed its original complaint May 6, 1949, setting forth two causes of action: (1) unfair competition and (2) copyright infringement. Defendants by answer denied the allegations of this complaint. On September 28, 1949, a supplemental complaint was filed, charging infringement of the Russell patent. On November 14, 1949, defendants by answer denied such infringement and alleged invalidity. On February 10, 1950, plaintiff filed a second supplemental complaint, also alleging infringement of the Holden patent. On February 21, 1950, plaintiff filed a further amended complaint, which incorporated both the Russell and Holden patent infringement charges previously made. On the same date, by stipulation, the original complaint for unfair competition and copyright infringement was dismissed with prejudice. On March 21, 1950, defendants filed their answer to the amended complaint, denied infringement and alleged invalidity of both patents. On April 24, 1950, plaintiff moved to dismiss the amended complaint insofar as it alleged infringement of the Russell patent, and defendants on the same date moved for leave to file a counterclaim for declaratory judgment with respect to both patents. Thereupon, the court denied plaintiff's motion to dismiss with respect to the Russell patent and allowed defendants' motion to file their counterclaim for declaratory judgment. Such counterclaim was filed April 24, 1950, and sought a declaration of invalidity and non-fringement as to both patents and, as shown, no reply to this counterclaim was filed by plaintiff.

At the trial, counsel for plaintiff stated, "Now, we are not interested in pressing our charge of infringement of the Russell patent. And we state here in court that the defendants in so far as the Russell patent is concerned, and in so far as the structure they are now claiming, they are as free as all outdoors." Thereupon, counsel for defendants called the court's attention to the fact that plaintiff had made no reply to their counterclaim and that under the rules they were entitled to judgment. Counsel stated, "But we think that we

ought to be entitled to a decree under the circumstances in view of this type of pleading that has been going on here, adjudging that Russell patent invalid, and by reason of their failure to reply to the counterclaim asking for a declaration of invalidity." The court made no ruling upon defendants' request at that point. No evidence was introduced by either party as to the Russell patent, not even the patent itself, but after a trial had been had as to the Holden patent, the court made the finding (heretofore quoted) as to the Russell patent, followed by the adjudication complained of.

Thus, when Rule 8(d) as well as the history of the proceedings were specifically called to the attention of the court in the presence of counsel for plaintiff, no leave was sought and no effort was made to answer the counterclaim. Under such circumstances, it would seem that the failure to do so was not the result of inadvertence but rather an intentional failure on the part of counsel.

Plaintiff relies upon a number of the rules of civil procedure in support of the argument that the rules should be construed not technically but in a manner to do substantial justice. We think the argument is sound but, even so, it is of little, if any, benefit to plaintiff's position. Counsel for plaintiff in oral argument conceded that the matter of the application of Rules 7(a) and 8(d) to the situation before the court was discretionary. Assuming that such is the case, plaintiff's postion, if sustained, would require a holding that the district court abused its decretion in giving effect to the plain, unambiguous language of these rules. No case is called to our attention which would require or authorize, under the circumstances presented, such action on our part.

And we think there is no merit in the contention that the court was without jurisdiction merely because of the statement in open court that plaintiff had abandoned its charge of infringement. It was plaintiff which initiated the proceeding by alleging that its patent was valid and infringed by defendants. Certainly the court acquired jurisdiction of the parties and the subject matter. More than that, jurisdiction was conferred by defendants' counterclaim. These pleadings remained before the court to the end, and is not discernible how or when the court lost jurisdiction to decide all or any issues which were presented, either by the plaintiff in its complaint or by defendants in their counterclaim.

Plaintiff relies upon two decisions of this court, Tuthill v. Wilsey, 182 F.2d 1006, and Winsor v. Daumit, 185 F.2d 41, in support of its contention that the court was without jurisdiction. An examination of these cases, however, discloses that they are not in point. In the Tuthill case, it is true that relief under the Declaratory Judgment Act was denied but on the ground that there had been no charge of infringement by the owner of the patent and hence no controversy between the parties. The Winsor case is to the same effect. There, a declaratory judgment was sought relative to a copyright and trademark owned by the plaintiff. Relief was denied, but again on the ground that no controversy existed because of the absence of a charge of infringement. On the other hand, a case much in point is Benz et al. v. J. Laskin & Sons Corp., D.C., 43 F.Supp. 799, decided by Judge Duffy as a district judge, which supports the view we take, that is, that the court was not deprived of jurisdiction because of plaintiff's belated withdrawal of its charge of infringement. The decree as it concerns the Russell patent is, therefore, affirmed.

The Holden patent is entitled "Air Current Deflector" and, as stated by the district court in its findings, "is directed to an air current deflector adapted to be mounted on the leading edge of a vertically pivoted automobile window ventilator, commonly called a no-draft ventilating window, and movable with the ventilating window, whereby to deflect downwardly air entering the automobile when the ventilating window is open and the automobile is in motion and to ventilate the interior of the automobile."

The parties, in support of their respective positions, advance and argue at length the points usually made in a suit of

this character. In the view we take of the case, we think it unnecessary to pay more than passing attention to many of the points discussed. This is so because the essential issue of infringement must depend upon whether defendants' accused structure is made in accordance with the patent as it must be construed in view of its file wrapper history. Admittedly, the accused structure is almost an exact duplicate of plaintiff's commercial structure, but whether either embodies the elements contained in the claim in suit is the important issue.

Claim 1, solely relied upon, provides: "An air deflector of the character described for use upon vertically pivoted vehicle ventilators and formed from a single sheet of material, said deflector comprising a body portion of concavo-convex formation and conforming to a frustro-conical segment, one edge of said body portion terminating in an attaching channel of U-shape open upon one side, said channel having its opposite closed side slotted for the reception of the frame member of the ventilator and means integral with said channel for removing the deflector."

As to this claim, the district court found:

"Defendants' accused deflector is not formed from a single sheet of material. Rather, it is formed from a sheet of plastic material to which are attached, by rivets, two separate conventional spring clips.

"Defendants' accused deflector does not conform to a frustro-conical segment. Rather, it conforms to a segment of a cylinder.

"Defendants' accused deflector does not terminate in an attaching channel of any kind, let alone a U-shaped channel open on one side. Rather, Defendants' deflector utilizes conventional spring clips which are riveted to the body portion of the deflector adjacent the vertical side edge thereof.

"Defendants' accused deflector has no U-shaped channel wherein the closed side of the channel is slotted. The separate attaching clips on Defendants' deflector are not a slotted U-shaped channel.

"Defendants' accused deflector does not provide any removing means integral with

the channel for the purpose of removing the deflector."

These findings are substantially supported and must be accepted. Moreover, a reading of the claim in connection with the accused structure adds weight to their validity.

Much is said in plaintiff's brief concerning the object and purpose sought to be accomplished by the patentee, and that defendants' accused structure not only served the same purpose but that it is essentially identical with plaintiff's commercial device. But it is our understanding of the law that it is the claim which measures the extent of the grant and that express limitations in a claim cannot be ignored in the determination of infringement. Universal Oil Products Co. v. Globe Oil & Refining Co., 137 F.2d 3, affirmed 322 U.S. 471, 484, 64 S.Ct. 1110, 88 L.Ed. 1399. Especially is this true where the claim was allowed, as here, under circumstances which require that it be strictly construed and limited to the particular elements disclosed.

The file wrapper contents show that Holden met rugged resistance in the patent office. Notwithstanding the purpose of his invention, as well as the objective sought to be accomplished, were stated, his broad claims were disallowed, in view of the prior art. In the first action by the patent office, the six claims proposed were all rejected over the prior art. Thereupon these claims were cancelled by Holden and three new claims presented. These were rejected over the prior art and were cancelled by Holden. Two further claims were presented (including the claim in suit), which were allowed. In presenting these claims, the patentee stated, "The newly submitted claims have been drawn specific to applicant's invention * * *."

Of the claims rejected as unpatentable because of the prior art, claim 3 is typical. It states: "In an air current deflector, a deflector of the class described comprising a frustro-conical concavity, and means integral therewith to removably secure the deflector to one free end of a pivotally mounted sash of the door of a motor-driven

vehicle as deflecting means for the current of air from said sash toward the floor of the vehicle body."

It would appear that the general language of this claim would cover almost any device utilized for the same purpose, and particularly if it obtained the same or similar results. However, in order to secure the allowance of his claims the patentee was required to embody therein all of the structural limitations which he disclosed in his drawings and described in his specifications. The claims were required to be specific to his invention, with a detailed enumeration of the elements relied upon.

Under the circumstances attendant upon the procurement of the claims, the patentee is in no position to enlarge their scope or to assert their application in the general language which was rejected by the patent office over the prior art. Neither can the patentee under such circumstances assert his claims against equivalents which might respond to his rejected claims but which do not respond to the claims as issued. Dixie Cup Co. v. Paper Container Mfg. Co., 7 Cir., 169 F.2d 645, 648; Exhibit Supply Co. v. Ace Patents Corp. et. al., 315 U.S. 126, 136–137, 62 S.Ct. 513, 86 L.Ed. 736; Schriber-Schroth Co. v. Cleveland Trust Co. et al., 311 U.S. 211, 220, 61 S.Ct. 235, 85 L.Ed. 132.

We agree with the district court that defendants' accused device does not infringe the claim in suit. At the same time, no adjudication was made on the issue of validity. True, the court found that if claim 1 was construed so as to be infringed by defendants' device, the claim "is invalid for want of invention over the prior art." That is merely another way of saying that an adjudication of infringement would require a reading of the claim as though written in general language and in a form which had been rejected by the patent office. The court, however, as heretofore shown, construed the claim as written, that is, in its specific and limited form, and having so construed the claim, the issue of validity was not determined. Under this state of the record we find no occasion to consider the issue of validity, and it follows

that prior art patents need not be considered and that the asserted commercial success of plaintiff's device is immaterial.

The order appealed from is

Affirmed.